# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 9, 2006 Session

## STATE OF TENNESSEE v. WILLIAM EARL CHERRY

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-CR02905     Donald P. Harris, Judge**

---

**No. M2005-02327-CCA-R9-CO - Filed July 26, 2006**

---

The defendant, William Earl Cherry, was indicted for three counts of aggravated assault and three counts of reckless endangerment. He filed an application for pretrial diversion, and the State denied his request. He then filed a petition for writ of certiorari, and the trial court ordered that the State enter into a memorandum of understanding. The State filed a Rule 9 appeal. Following our review, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Braden H. Boucek, Assistant District Attorney General, for the appellant, State of Tennessee.

Joseph D. Baugh and Mark L. Puryear, Franklin, Tennessee, for the appellee, William Earl Cherry.

## OPINION

### FACTS

The defendant was arrested as the result of his firing shots at a vehicle, with three young women inside, which had turned into his driveway. The lengthy letter of the District Attorney General set out the facts of the offenses:

> The circumstances of this offense are extremely serious and factor heavily against a grant of diversion. The evidence is largely undisputed. A car with three teenage girls on the way to a party drove into the defendant's driveway when they

became confused and low on gas. The defendant awoke and, fearing the girls were vandals, got a pistol and rifle and then went outside to the car. The defendant then shot the car three times as it sped off of his property. The girls were on the phone with 911 who recorded the terrified girls as the defendant shot at their car. Two bullet holes were found on the side of the car. Another was located in the center of the rear trunk. When deputies dispatched to the scene attempted to take the firearms from the defendant, he verbally refused before attacking Deputy Gary Luther. I cannot help but note that these victims were young girls who were lost, vulnerable, presented no threat and did nothing to provoke this attack other than have the misfortune of steering into his driveway.

Because a car pulled into his driveway at night, the defendant armed himself with a handgun and a rifle. Rather than simply call the police he sought out the car and opened fire on it with the girls inside. The 911 recording of the girls as the defendant fired upon them provides chilling access into their moment of terror. The defendant informed the deputies in his statements that he originally intended on firing the rifle but it jammed forcing him to resort to the pistol. Had this occurred the final shot fired by the defendant could have pierced the car and struck one or more of the girls. In spite of the defendant and but for fickle luck there might have been serious bodily injury or death. His decision to scuffle with a deputy who was investigating the crime only exacerbates its wrongfulness.

According to the defendant he was attempting to shoot out their tires in an effort to subdue them because he thought they were trespassing vandals. This is misguided from the outset since [, in situations such as these,] the law does not countenance the use of deadly force against others, be they stranded motorists (as they in fact were) or even trespassers (as the defendant erroneously assumed).

Moreover the photographs taken of the car contained in the case file belie this claim in part. The final shot is centered on the rear trunk area of the car. It is difficult to believe that this was fired at the tires. This shot must have come as the victims' car sped away, any threat was gone and opportunity to hit the tire long past. I will note that on the videotape the defendant informed the officers that he was a "good shot [who] shoots what he intends to shoot." If that is the case the final shot at least was not intended for a tire. In light of this, it is my opinion that the defendant intended to do more than merely shoot out the tires. His attack on Deputy Luther likewise suggested that more than a mere legal misunderstanding of how he could apprehend trespassers fueled his actions. I do not find that his mistaken assumptions mitigate his behavior.

As for other relevant considerations, the State's letter noted the fact the defendant has no prior criminal record, which "preponderates in his favor" and that his "flawless" social history was accorded great weight. As to whether it would be just for the defendant to be placed on pretrial

diversion, the State concluded that, because of the nature of the offenses and continuing problems of one of the victims, "it seems excessively lenient to allow the defendant [to] 'pretend that nothing happened' by legally obliterating out of existence any record of the crime."

As to the defendant's amenability to correction and likelihood to reoffend, the State concluded that, although the defendant is a "model citizen," it cannot be ruled out that "he would reoffend under substantially the same facts." The State explained this statement, saying that the defendant "has consistently stopped short of exhibiting an understanding that he did not have a right to fire a weapon that night no matter who was in the car." As to this consideration, the State concluded that "while [the defendant] does make statements of contrition, they are undermined in large part by his inability to appreciate that his actions were unlawful without qualification." Additionally, the State opined that the defendant was not "totally forthright about the facts of the offense":

> In his statements to the deputies the night of the offense, the defendant stated that he fired twice and only at the tires. He maintained this even when the detective informed him that there were three bullet holes in the car. Even in his statement of facts in his pretrial diversion application, he only accounts for two shots at the car, both in the tire area. The photographs of the car show that he must have fired three times. This is no idle discrepancy since it is the third shot that is in the middle of the rear trunk, nowhere near a tire, and sure to have occurred when the victims were fleeing in terror off of his property taking with them the defendant's purported justification for the attack. That he continued to fire past the point of "justification" coupled with his persistent refusal to acknowledge the third shot forces the conclusion that this attack was about more than just poor judgment. His later attack on Deputy Luther bespeaks the same conclusion.

Further, the State noted that, although the defendant stated that the headlights on the victims' car were not turned on, the victim who was driving and the defendant's wife said that the emergency flashers were on, his wife stating further that she mentioned this fact to the defendant. Accordingly, the State placed "some weight" on this consideration, although noting that "the defendant is generally of an exceedingly law abiding temperament who is unlikely to be confronted by similar circumstances."

As for the best interest of the public and the defendant, the State concluded that neither would be served by granting pretrial diversion, as explained in the letter:

> Since the defendant chose to use a firearm, an unintended outcome could easily have been a fatal one. For instance in this case it is quite easy to imagine a bullet going astray and striking one of the girls, especially given that the defendant fired upon an erratically driven car full of terror-stricken teenagers and at least one of the shots was fired in haphazard fashion as the car sped away. I am therefore mindful of the opportunity to send a message to the population that one should not resort to the use

of potentially lethal force unless one or another is threatened with a potentially lethal threat. Given the extensive media coverage that has attended this case, it has the unique potential to carry that message. See generally, State v. Hooper, 29 S.W.3d 1, 11 (Tenn. 2000) ("A fundamental requirement of deterrence is that others know of the punishment received").

The State's letter further set out that pretrial diversion was not in the best interest of the defendant because, should the same situation arise again, the defendant "is liable to respond in a similar fashion."

The State concluded its letter by summarizing the reasons why the defendant was not acceptable for pretrial diversion:

> I cannot agree to pretrial diversion. This was a difficult determination for me. The defendant's character and social/criminal history preponderate as strongly in his favor as any candidate I have ever confronted. Ultimately, however, the facts of the offense weigh heavily as well. When coupled with the public need to deter such irresponsible use of firearms, the debt he owes the public for this injustice and my qualified concerns about his amenability towards correction, the factors in his favor are overwhelmed. As such his request for pretrial diversion is respectfully denied.

At a hearing on the petition, the only witness presented by the defendant was Detective Tameka Sanders, who was employed by the Williamson County Sheriff's Department and had been the lead investigator in the charges against the defendant. The function of her testimony appeared to be to allow first the defendant and then the State to go through the results of her investigation, putting the defendant alternately in a flattering and then unflattering light. Since the trial court did not identify any factual disputes which her testimony resolved and the defendant does not assert on appeal that this was the case, we will not recount it.

The trial court made oral findings and conclusions in explaining why the defendant should be placed in the pretrial diversion program:

> The district attorney in this case has said that pretrial diversion should be reserved for exceptional applicants in exceptional cases.
>
> And I think somewhat I agree with that and would look to this particular case. And I think there's no dispute either by the district attorney or the defense that certainly this is an exceptional individual.
>
> [The defendant] has never been accused of a crime. He's been a successful businessman apparently. He has several letters of recommendation from influential people.

4

I don't know that I've ever met or spoken to [the defendant], but I've been living in this community 35 years and I certainly know of his reputation just being here in Franklin, and it's been good. Well, I say it's good. It's been outstanding, and I think the district attorney agreed with that.

I then turn to whether this is an exceptional case. I think the first observation that I have to make is that certainly this is a potentially serious case. But it's also a case that our legislature has said that someone who's charged with this offense, aggravated assault, is eligible for pretrial diversion.

So the fact that he's charged with aggravated assault – in which in this case it's causing someone to fear imminent bodily injury by use of a deadly weapon in three counts with regard to three young women – and also with reckless endangerment in that he placed another person in fear of death or seriously bodily injury recklessly with a deadly weapon.

While they're serious offenses they are offenses that our legislature has said qualify for pretrial diversion. I also looked at the charges and find there's really no allegation that he intentionally tried to harm anyone.

As correctly pointed out, he certainly could have harmed someone, but there's no evidence or no charge that he intentionally tried to harm someone. He caused them to fear bodily injury by use of a deadly weapon, and he could have harmed someone.

This obviously is not a case where someone sets out to commit a criminal offense. I suspect that [the defendant] would prefer that the car didn't come up into his driveway that evening, and that he had a peaceful evening and gotten up the next morning and gone about his business, but that's not what happened.

There's something that triggered this whole thing and caused him to have to make decisions – and I'm not talking about the appropriateness of his decisions – but caused him to make decisions under less than ideal circumstances.

So it's not a case where someone goes out to commit an offense. As I said, I'm not in this case ruling upon the appropriateness of [the defendant's] actions one way or the other. I think certainly, as has been alluded to by the district attorney, any time someone shoots at or around a mere trespasser on his property, that's inappropriate.

[The defendant] indicates that he was fearful for his property and his safety and his wife's safety. And there's no reason to doubt that he was to some degree fearful of those situations.

5

So I don't pass on his appropriateness. But I think the mistake that may have been made by the district attorney in this case is the fact that his decision was based upon the outcome of the facts as they developed after [the defendant] took his actions.

And what I mean by that is if this vehicle had – if all the facts were the same as they are and this vehicle had been stopped and they found two or three burglars in there with property from other burglaries in the community, I very seriously doubt as a practical matter that we would be here today.

The reason that we're here is it turned out that the people – the inhabitants of that vehicle, unknown to [the defendant], turned out to be three innocent young women.

And while their decision to go that close to a house, however close, whichever location it was, is probably not too wise. Certainly, that's the reason that we're here today, the fact that – what turned out to be the facts were not as what was feared by [the defendant].

So I think to that extent this is an exceptional case both from the suddenness that came up, and that we're really basing our decision on the facts as they developed after [the defendant] took his actions and not the facts as he might have reasonably thought them to be when he took those actions.

I don't like the requirement to find that the district attorney abused his discretion because I think even the district attorney felt that this would be a close case and obviously anguished over his decision.

I think that [the defendant] is amenable to correction. I don't think there's any purpose that can be furthered by proceeding with a criminal prosecution in this case.

And because I find that clearly this is a case for pretrial diversion, I would make the necessary finding and direct that a memorandum of understanding be prepared granting to [the defendant] pretrial diversion.

I do think that a provision of that ought to be that he make restitution. Restitution in a criminal case and damages in a civil case are different.

The only restitution that's been alluded to by the victims in this case is that they have incurred expenses including – for counseling that they've had to receive.

And I don't doubt that they've had had [sic] to have counseling, and that they went through a terrible situation. There's no question in my mind that that occurred.

So I would direct that he pay for reasonable expenses incurred for counseling. That if they have jobs and have to lose work to get that counseling, then he should also defer those expenses.

And I haven't heard of anything else. If there's some disagreement as to whether the amount that's been submitted for counseling and loss of income is unreasonable, then that will have to be presented back to the Court for a determination.

## ANALYSIS

On appeal, the State argues that the trial court substituted its judgment for that of the District Attorney General, asserting that "the trial court reweighed the evidence, vacated the prosecutor's decision, and imposed its judgment on the prosecutor. And the trial court did so without finding any unconsidered evidence and without finding that the district attorney's decision was unsupported by substantial evidence." The defendant responds that the trial court correctly found that the District Attorney General failed to "properly weigh[] the factors in his decision to deny pretrial diversion." We will review these claims.

Our legislature has provided that the decision to grant pretrial diversion should rest within the discretion of the district attorney general. See Tenn. Code Ann. § 40-15-105 (Supp. 2005); see also State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999) ("[W]hether to grant pretrial diversion to a qualified defendant who is statutorily eligible is a determination that lies in the discretion of the district attorney general."). While our legislature has defined a "qualified defendant" as one who meets statutory requirements set out in Tennessee Code Annotated section 40-15-105(a)(1)(B)(i) (Supp. 2005),[1] the courts have provided guidance to prosecutors in determining which defendants among those who pass the statutory requirements are then suitable for pretrial diversion. See Curry,

---

[1] According to this section, a "qualified defendant" must meet each of the following requirements:

> (a) The defendant has not previously been granted pretrial diversion under the provisions of this chapter or judicial diversion under the provisions of § 40-35-313;
>
> (b) The defendant does not have a prior misdemeanor conviction for which a sentence of confinement is served or a prior felony conviction within a five-year period after completing the sentence or probationary program for such prior conviction; and
>
> (c) The offense for which the prosecution is being suspended is not a Class A or Class B felony or a Class C felony as defined in subsection (a), a sexual offense, driving under the influence of an intoxicant as prohibited by § 55-10-401, or vehicular assault as prohibited by § 39-13-106.

7

988 S.W.2d at 157 ("One who is statutorily eligible is not presumptively entitled to diversion."). The factors relevant to the prosecutor's determination focus on the defendant's "'amenability to correction.'" Id. (quoting State v. Pinkham, 955 S.W.2d 956, 959-60 (Tenn. 1997)).

Our supreme court restated, in State v. Bell, 69 S.W.3d 171, 177 (Tenn. 2002), that the State's responsibility, when reviewing an application for pretrial diversion, was to consider and discuss all relevant factors:

> In cases where the district attorney general denies an application for pretrial diversion, the denial must be written and must discuss all of the relevant factors considered and the weight accorded to each factor. State v. Curry, 988 S.W.2d at 157. That a defendant bears the burden of establishing suitability for diversion does not relieve the district attorney general of the obligation of examining all of the relevant factors and of setting out all of the required written findings. Id.; see also State v. Pinkham, 955 S.W.2d at 959. In addition, the denial statement must identify factual disputes between the evidence relied upon and the application filed by the defendant. State v. Curry, 988 S.W.2d at 157.

The function of the trial court in considering a petition for writ of certiorari was also explained in Bell, as being for the court to review the evidence considered by the State and determine whether the District Attorney General abused his or her discretion in denying diversion:

> If an application for pretrial diversion is denied, the defendant may appeal to the trial court for a writ of certiorari. Tenn. Code Ann. § 40-15-105(b)(3) (1997 & Supp. 2001). On review, the trial court must consider only the evidence considered by the district attorney general and must determine whether the district attorney general has abused his or her discretion. See State v. Curry, 988 S.W.2d at 158 (citation omitted). To determine whether there has been an abuse of discretion, the trial court must determine whether the district attorney general has considered all of the relevant factors and whether substantial evidence existed to support the denial of diversion. Id.; see also State v. Hammersley, 650 S.W.2d at 353.

Id. at 177 (footnote omitted). The scope of a hearing on a petition for writ of certiorari is "only to resolve any factual disputes raised by the district attorney general or the defendant." Id. at 177 (citing Curry, 988 S.W.2d at 158).

The court further detailed, in Bell, the limited review of the trial court in hearing a petition for certiorari in a diversion matter:

> It is critical to emphasize that the discretion to grant or deny pretrial diversion rests with the district attorney general, not the trial court. The trial court, in exercising its rather limited review pursuant to a petition for a writ of certiorari, may not re-weigh the evidence or substitute its view for that of the district attorney

8

general.  See, e.g., Ben H. Cantrell, Review of Administrative Decisions by Writ of Certiorari in Tennessee, 4 Mem. St. L. Rev. 19, 20 (1973).  Instead, the trial court must only determine whether the district attorney general has abused his or her discretion by failing to consider and weigh all of the relevant factors or by reaching a decision that is not supported by substantial evidence.  State v. Curry, 988 S.W.2d at 158; see also State v. Hammersley, 650 S.W.2d at 355.

Id. at 179.

In the present appeal, the State argues that the trial court did not properly review the denial of diversion because the court found no deficiencies in the State's response to the diversion request and did not engage in a balancing test, as had the State.  In the State's view, the trial court erred by concluding that the defendant would not have been prosecuted if, as he professed to believe, the victims were would-be burglars or vandals.  Further, the State argues that, instead of directing that the State reconsider the diversion request, the court directed that the State enter into a memorandum of understanding with the defendant, a remedy which was not available to the defendant.  The defendant counters that the State's response to his diversion request was deficient because it did not address his amenability to correction; the State improperly invoked the "exceptional circumstances" doctrine; and the State improperly considered the opposition of the victims to diversion.

As we understand the trial court's ruling, it did not find that the District Attorney General had abused his discretion by denying pretrial diversion.  Rather, the court concluded that the State had denied diversion "based upon the outcome of the facts as they developed after [the defendant] took his actions."  Thus, in the court's view, had the vehicle shot at by the defendant contained "two or three burglars . . . with property from other burglaries in the community," criminal charges might not have resulted. Further, the court concluded that "there's [not] any purpose that can be furthered by proceeding with a criminal prosecution in this case."

We agree with the State that the trial court erred in concluding that the defendant should be granted pretrial diversion.  The court neither identified relevant factors the State should have considered nor concluded that the State had failed to specify the weight afforded to each factor considered.  Likewise, the trial court failed to determine that substantial evidence did not exist to support the State's denying diversion to the defendant.  Rather, the trial court concluded that if the defendant's apparent view of the situation had been correct, that thieves had turned their vehicle into his driveway, it is likely that he would not have been prosecuted.  We agree with the State that this conclusion is speculative and debatable and that, by its ruling, the trial court appears to have substituted its opinion as to diversion for that of the State.  The function of the trial court was to determine whether the State abused its discretion in denying diversion, and this the court did not do.  Further, the trial court erred in ordering the State to enter into a memorandum of understanding, for the only remedies available to the court were to deny the petition or order that the State reconsider its denial of diversion, considering specific factors which the court was to identify.  Accordingly, we conclude that the trial court erred in this matter.  We reverse the order of the trial court and conclude that the defendant has failed to establish that he was entitled to pretrial diversion.

9

## CONCLUSION

Based upon the foregoing authorities and reasoning, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

_____
ALAN E. GLENN, JUDGE